UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BILLY TORRES,** | Civ. No. 23-00083 (KM) (MAH) |
| Plaintiff, | |
| v. | **OPINION** |
| **USAA CASUALTY INSURANCE COMPANY,** | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

    This action arises out of an automobile insurance policy issued to plaintiff Billy Torres by defendant Garrison Property and Casualty Insurance Company ("Garrison").[1] According to the complaint, defendant Garrison unlawfully and in bad faith refused to pay Torres the policy limit on an insurance claim he made after he was injured in a motor vehicle accident with an uninsured motorist. (Compl.)[2] Before the Court is Garrison's motion for partial dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the motion to dismiss (DE 5) is **GRANTED**.

    **I.**    **Background**

    The allegations of the complaint are few. Torres claims that on

---

[1]    Defendant Garrison was improperly named in the complaint as USAA Casualty Insurance Company.

[2]    Certain citations to the record are abbreviated as follows:

    DE = Docket entry in this matter
    Compl. = Civil complaint filed in New Jersey Superior Court (DE 1-1)
    Not. = Notice of removal by defendant Garrison (DE 1)
    Mot. = Memorandum of law in support of Garrison's motion to dismiss (DE 5-1)
    Opp. = Memorandum of law in opposition to Garrison's motion to dismiss (DE 7)

1

June 22, 2019, he was involved in a motor vehicle accident with an uninsured motorist. (Compl. ¶3.) He sustained serious and permanent physical injuries, suffers from continued mental anguish, and can no longer continue his normal activities and employment. (*Id.* ¶4.)

At the time of the accident, Torres was insured under an automobile liability policy issued by defendant Garrison. (*Id.* ¶3.) It can be inferred from the complaint that he submitted a claim to Garrison for payment at some point. Garrison refused to pay up to the policy limit, despite the fact that the value of the claim is, allegedly, "clearly and significantly in excess of the Policy limits." (Count 3 ¶2.) The complaint does not specify what the policy limit is or the amount, if any, that Garrison paid out on Torres's claim.

Torres commenced this action in New Jersey Superior Court, Middlesex County on December 7, 2022. (Compl.) The complaint contains three counts: breach of contract (Count 1), breach of the implied covenant of good faith and fair dealing (Count 2), and a claim under the New Jersey Insurance Fair Conduct Act ("IFCA") (Count 3). *See* N.J. Stat. Ann. § 17:29BB.

On January 9, 2023, Garrison removed the matter to federal court on the basis of this Court's diversity jurisdiction. (Not. ¶10.) The notice of removal states that Torres is a resident of New Jersey, while Garrison is incorporated and headquartered in Texas. (*Id.* ¶12.) It further states that the matter in controversy exceeds $75,000, as the policy at issue has a $300,000 limit. (*Id.* ¶¶13-14.)

On January 17, 2023, Garrison filed its motion to dismiss. (DE 5.) Garrison seeks dismissal of Counts 2 and 3 for failure to state a claim, or, in the alternative, to bifurcate and stay those claims until the breach of contract claim is resolved.

## II. Legal standards

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science*

*Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of resolving a Rule 12(b)(6) motion to dismiss, the court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

The Federal Rules of Civil Procedure do not require that a complaint contain detailed factual allegations. *See* Fed. R. Civ. P. 8(a). Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief.") (Citation omitted). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570.

### III. Discussion

#### A. Breach of implied duty of good faith and fair dealing (Count 2)

"All contracts impose an implied obligation of good faith and fair dealing in their performance and enforcement." *Badiali v. New Jersey Mfrs. Ins. Grp.*, 220 N.J. 544, 553 (2015). "The good faith obligations of an insurer to its insured," however, "run deeper than those in a typical commercial contract." *Id.* at 554.

In *Pickett v. Lloyd's*, 131 N.J. 457 (1993), the New Jersey Supreme Court held that an insurance company owes a duty of good faith to its insured in processing a first-party claim, *i.e.*, a claim for benefits made by the insured individual, rather than a third party. *Id.* at 467. The Court also recognized a tort remedy for an insurer's bad faith in refusing to pay such a claim. *Id.* at 469-472.

3

To prevail on a claim for bad faith denial of first-party benefits under New Jersey law, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Pickett*, 131 N.J. at 473 (citation omitted). Put succinctly, "[i]f a claim is 'fairly debatable,' no liability in tort will arise." *Id.* (Citation omitted.) This standard "is premised on the idea that when an insurer denies coverage with a reasonable basis to believe that no coverage exists, it is not guilty of bad faith even if the insurer is later held to have been wrong." *Hudson Universal, Ltd. v. Aetna Ins. Co.*, 987 F. Supp. 337, 341 (D.N.J. 1997). Thus, "[u]nder the 'fairly debatable' standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad-faith refusal to pay the claim." *Pickett*, 131 N.J. at 473. *See Badiali*, 220 N.J. at 555.

Garrison argues that Torres has failed to plead sufficient facts to render plausible his claim for bad faith. (Mot. 4-6.) I agree. While Torres alleges in a conclusory fashion that the value of his claim is "clearly and significantly in excess of the Policy limits," he provides no supporting details. His injuries are described in vague terms, and the complaint does not even specify what the policy limit is. It is impossible to surmise whether Garrison had a reasonable basis for refusing to pay the policy limit on Torres's claim from these bare-bones, unsupported allegations. I will therefore grant the motion with respect to Count 2 and dismiss without prejudice Torres's common law bad faith claim. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 136 (2012) (affirming district court's dismissal of bad faith claim under Pennsylvania law pursuant to Rule 12(b)(6)).

### B. Violation of New Jersey IFCA (Count 3)

The New Jersey IFCA was signed into law on January 18, 2022. Pursuant to the IFCA, a first-party claimant who is entitled to benefits under an uninsured or underinsured motorist policy by an insurer may sue the

insurer for "an unreasonable delay or unreasonable denial of a claim for payment of benefits" under the policy. N.J. Stat. Ann. § 17:29BB-3. Upon establishing a violation, the claimant is entitled to actual damages not exceeding three times the applicable coverage amount, pre- and post-judgment interest, and attorney's fees and litigation costs. *Id.*

Garrison argues that Torres's IFCA claim must be dismissed with prejudice because the IFCA does not apply retroactively. (Mot. 6-8.) Garrison points out that, according to the complaint, the accident from which Torres's injuries stem occurred in 2019—over two years prior to the enactment of the IFCA. Consequently, Torres may bring a claim under the IFCA only if the statute is retroactive in its application.

The New Jersey Supreme Court has "'long followed a general rule of statutory construction that favors prospective application of statutes.'" *Cruz v. Cent. Jersey Landscaping, Inc.*, 195 N.J. 33, 45 (2008) (quoting *Gibbons v. Gibbons*, 86 N.J. 515, 521 (1981)). This preference is based on "long-held notions of fairness and due process." *Cruz, supra.* There are three recognized exceptions to the general rule of prospective application, however: "(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant." *James v. New Jersey Manufacturers Ins. Co.*, 216 N.J. 552, 563 (2014). Torres argues that the IFCA applies retroactively both because the New Jersey legislature intended it to and because it is curative.

"The Legislature may demonstrate its intent to apply a statute retroactively either by stating so 'in the language of the statute or in the pertinent legislative history … or [such intent may be] implied.'" *James*, 216 N.J. at 564 (quoting *Gibbons*, 86 N.J. at 522). "Implied retroactivity may be found from the statute's operation when retroactive application is necessary to fulfill legislative intent." *James, supra.* "When the Legislature addresses whether a statute should apply retroactively to the law's enactment, that expression of legislative intent should be given effect absent a compelling

5

reason not to do so." *James, supra.* (Citing *Nobrega v. Edison Glen Assocs.,* 167 N.J. 520, 537 (2001)).

In arguing that the legislature intended the IFCA to apply retroactively, Torres relies on a statement made during a legislative committee hearing by Senator Nicholas P. Scutari, who sponsored the bill that became the IFCA. In response to a question from Senator John F. Mckeon about the "effective date" of the statute and whether it would "be fair for it to be retroactive," Senator Scutari stated:

> Well, the only thing I would say to that is if we-we want people to be treated fairly, we want that to start right away. I don't know why we would let people that already have claims that are pending to be able to be dealt with unfairly and then people who have new claims, they get to be treated fairly. That is the argument I would make is that we're dealing with just trying to have people dealt with fairly. I don't know why the older claims, they get to be dealt with unfairly and the new claims will be dealt with fairly.

Opp, Ex. A at 2:11-23.

Senator Scutari's statement certainly suggests that he supported at least some form of "pipeline" retroactivity for the IFCA. Nonetheless, I cannot extrapolate from this statement that the legislature as a whole felt the same way, or expressed that feeling in legislation. "Unofficial statements of individual legislators . . . 'are not generally considered to be a reliable guide to legislative intent.'" *Johnson v. Roselle EZ Quick LLC*, 226 N.J. 370, 390 (2016) (quoting *Berg v. Christie,* 225 N.J. 245, 275 (2016)). Unlike official sponsor statements affixed to a bill, unofficial statements "'tell us only what the speaker ... believed' and 'nothing about what the Legislature meant by the words it chose to include in the amendment.'" *Johnson, supra* (quoting *Cruz, supra,* 195 N.J. at 48).

The best indicator of legislative intent is, of course, the language of the statute itself. *State v. J.V.*, 242 N.J. 432, 442–43 (2020), as revised (June 12, 2020) (citing *Johnson, supra,* at 386). Here, the statute provides that it "shall take effect immediately." NJ LEGIS 388 (2021), 2021 NJ Sess. Law Serv. Ch. 388 (SENATE 1559) (WEST). The New Jersey Supreme Court, in analyzing

6

these exact words, has observed that they "bespeak an intent contrary to, and not supportive of, retroactive application." *Cruz,* 195 N.J. at 48. The New Jersey Supreme Court reasoned that, "had the Legislature sought to apply the amendment to all pending claims, it could have adopted the approach taken in other amendments, such as applying it to 'all actions and proceedings that accrue, are pending or are filed' at the time of enactment." *Johnson,* 226 N.J. at 390.

Because the New Jersey legislature did not express an intent for the IFCA to apply retroactively, I will turn to Torres's argument that the statute fits under a second exception for legislation that is "curative." A statute is "curative" if it is "designed to 'remedy a perceived imperfection in or misapplication of a statute.'" *James,* 216 N.J. at 564 (quoting *Schiavo v. John F. Kennedy Hosp.,* 258 N.J. Super. 380, 386 (App. Div. 1992), *aff'd,* 131 N.J. 400 (1993)). "Generally, curative acts are made necessary by inadvertence or error in the original enactment of a statute or in its administration." *James, supra* (citing 2 Sutherland, *Statutory Construction,* § 41.11 at 417 (5th ed. 1991)). As a result, "[a] curative statute may clarify, but may not change, the meaning of existing law." *Johnson,* 226 N.J. at 388 (citing *Schiavo, supra,* at 386-87).

To support his interpretation of the IFCA as a "curative" statute, Torres emphasizes that New Jersey law prohibited insurance companies from engaging in unfair claim settlement practices long before the IFCA's enactment. N.J. Stat. Ann. § 17:29B-3. Pre-ICFA, the New Jersey legislature explicitly defined unfair settlement practices to include "refusing to pay claims without conducting a reasonable investigation based upon all available information" and "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." N.J. Stat. Ann. § 17:29B-4(9). Viewed against that backdrop, says Torres, the IFCA "merely supplements the existing legislation by providing the ability to file a claim against insurance carriers for their violations." (Opp. 4.)

The IFCA supplements existing law by providing a remedy not previously available. In some trivial or colloquial sense, it could be said to "cure" a prior gap in the law. The same could be said, however, for virtually any new law unless the legislature was writing on a clean slate, which is rarely the case. To be "curative," a legislative act must be more in the nature of an amendment or improvement to a prior existing scheme, perhaps most particularly one in which the legislature's intent was imperfectly realized.

Prior to the ICFA's enactment, the Commissioner of the Department of Banking and Insurance had the sole authority to enforce the prohibition on unfair claim settlement practices. That was a legislative choice, clearly intended and expressed. The Commissioner in turn could order the insurer to make restitution to the aggrieved person, but there was no statutory provision entitling the aggrieved person to sue. N.J. Stat. Ann. § 17:29B-18. The IFCA thus created a private cause of action that, before its enactment, did not exist at all.

The creation of a new private cause of action is too drastic a step to be regarded as merely "curative." There is no evidence that the ICFA somehow implemented or improved a prior attempt to create a private cause of action. To the contrary, it appears very clearly that the IFCA was meant to *enhance* the existing scheme by creating a *new* remedy for insured individuals whose insurance companies treated them unfairly. In this manner, the IFCA altered New Jersey law; it did not merely clarify it. *Cf. Cty. of Monmouth v. Commc'ns Workers of Am.*, 300 N.J. Super. 272, 292 (App. Div. 1997) (finding statute curative where committee statement provided that the amendatory act was meant to clarify existing law).

Accordingly, I conclude that the IFCA is not retroactive in its application. At least one New Jersey Superior Court Judge has considered the issue and held similarly. *See Mosquera v. Vasquez*, MRS-L-000860-21 (N.J. Super. Ct. Law Div. Mar. 10, 2022). The IFCA therefore does not apply to Torres's claim, which accrued on June 22, 2019.

## IV.  Conclusion

For the reasons set forth above, the motion to dismiss Counts 2 and 3 (DE 5) is **GRANTED**. Because only Count 1 remains, I do not reach the issue of bifurcation. The usual presumption is that an initial dismissal should be without prejudice. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  I would add that the state-court complaint in this removed case was likely drafted without federal pleading standards in mind. Accordingly, this dismissal is entered without prejudice to the submission of a proposed amended complaint within 45 days. An appropriate order accompanies this opinion.

Dated: August 16, 2023

/s/ Kevin McNulty

_____

**KEVIN MCNULTY**
**United States District Judge**